**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**



| | | |
|---|---|---|
| DUKE W. ZINSER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Case No. 4:25-cv-1030 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| VIVINT, LLC AND | § | |
| VIVINT, INC., | § | |
| | § | |
| *Defendants*. | § | |

---

## COMPLAINT FOR PATENT INFRINGEMENT

---

Plaintiff Duke W. Zinser ("Zinser" or "Plaintiff") files this Complaint against Vivint, LLC and Vivint, Inc. ("Vivint" or "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

### THE PARTIES

2.      Zinser is an individual residing in Plano, Texas.

3.      Upon information and belief, Vivint, LLC is a limited liability company organized under the laws of the State of Utah with its principal place of business at 4931 North 300 West, Provo, Utah 84604.

4.      Upon information and belief, Vivint, Inc. is and/or was a corporation organized under the laws of the State of Utah with its principal place of business at 4931 North 300 West, Provo, Utah 84604.

5.      Upon information and belief, in 2024, Vivint, Inc. converted from a corporation to a limited liability company.  *See* Exhibit A (Amendment to Registration to a Change Resulting from a Conversion or Merger dated 10/1/2024) (Vivint LLC and Vivint, Inc. are collectively referred to herein as "Vivint" or "Defendants").

<u>**JURISDICTION AND VENUE**</u>

6.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8.      Vivint is subject to this Court's specific and general personal jurisdiction due to its substantial business in this forum.  For example, Vivint is subject to the specific personal jurisdiction of this Court because Zinser's claims for patent infringement arise from Vivint's acts of infringement in the State of Texas. These acts of infringement include selling and offering to sell infringing products in the State of Texas and placing infringing products into the stream of commerce through an established distribution channel with full awareness that substantial quantities of the products have been shipped into the State of Texas. Therefore, this Court has personal jurisdiction over Vivint under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b). Vivint offers products and services, conducts business, and has physical business locations in the Eastern District of Texas.

10.      Vivint has multiple business locations in this District. Vivint owns a building located at 16440 Gateway Path in Prosper, Texas, which is in Collin County, Texas, with an

appraised taxable value of $4,486,436.  *See* Exhibit B, a true and correct copy of the Collin

County Tax Statement for 2024.  The building is shown below from Google Maps:



https://www.google.com/maps/@33.2140203,-96.8067401,3a,15y,239.67h,94.28t/data=!3m7!1e1!3m5!1saahqEUygDvWo6FxI4s7hoA!2e0!6s

https:%2F%2Fstreetviewpixels-pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%3D-4.281853875726327%26panoid%3DaahqEUygDvWo6FxI4s7hoA%26yaw%3D239.66874556796253!7i16384!8i8192?entry=ttu&g_ep=EgoyMDI1MDgxMC4wIKXMDSoASAFQAw%3D%

3D  (last accessed September 18, 2025). Upon information and belief, the sign with the Vivint

name and logo is still present on this building as of the filing of this Complaint.

      11.     Vivint advertises this office location on its website as shown below.[1]







https://www.vivint.com/locations/texas/frisco (last accessed September 18, 2025)

---

[1] The addresses listed on the website (16440 Gateway Drive) and the address listed in the tax records (16440 Gateway Path) are the same location.

12.     Further, Vivint also has a business location in this District located in Collin County at 5212 Tennyson Pkwy, Suite 150, Plano, TX 75024. Vivint advertises this location on its website as shown below.





https://www.vivint.com/locations/texas/plano (last accessed September 18, 2025)

13.     In addition, Vivint's website describes areas within this District as part of its "Service Area."  For example, the following is the page showing the service area for McKinney, Texas:



https://www.vivint.com/locations/texas/mckinney (last visited September 18, 2025).

14.    To conduct this business, Vivint employs a number of individuals within this District.  For example, the website below with a heading that includes the Vivint name and logo lists jobs available within this District.

**Direct-To-Home- Full Time Installation Technician - Plano, TX**

APPLY NOW ▶

**Date:** Sep 13, 2025

**Location:** Plano, TX, Virtual, 75074

**Company:** NRG

Welcome to the intersection of energy and home services. At NRG, we're driven by our passion to create a smarter, cleaner and more connected future.

Vivint Smart Home, an NRG owned company, is a leading smart home company in the United States, dedicated to redefining the home experience with intelligent products and services. We find purpose in proactively protecting and keeping our customers connected to home, no matter where they are. Join the Smart Home team to create smarter, safer and more sustainable homes.

Direct-to-Home Smart Home Pros provide expert-level installation and services, while delivering the highest caliber of customer service. Customers will rely on you to act with honesty and integrity as you offer what they have been looking for — peace of mind.

What you'll do:
- Earn piece rate pay and enjoy an unlimited commission plan.
- Become an expert on smart home technology by training on industry-leading products.
- Manage inventory and assets with a business owner mentality.
- Install, service, and troubleshoot cutting-edge smart home technology in customer homes.
- Create solutions to protect and simplify customers' lives.
- Conduct routine maintenance and inventory of company products and equipment.
- Explain and provide detailed system capabilities and operational instructions to various customers.
- Control your own income by providing opportunities for customers to purchase additional products and services.
- Leverage service and installation appointments into leads and revenue.

What we're looking for:
- Exceptional customer service skills.
- Sales experience and/or field service experience is helpful. (Experience as a construction worker, electrician, or other technical background is helpful but not required)
- Someone who thrives in a team environment and can also be trusted to work independently.
- Willingness to submit to a criminal background check.
- Current valid driver's license and reliable transportation

Minimal Requirements:
- Candidates must live within a 20-mile radius of the city
- Successful candidates will be required to pass a pre-employment criminal background check, motor vehicle record check, and drug screening, in compliance with applicable laws.

Physical demands of the job:
- Lift and carry up to 45 lbs.
- Climb ladders up to 14'.
- Work in attics and other limited-space areas.
- Bend, kneel, crouch, and stand for long periods.
- Safety culture is strong at Vivint, and our team members complete a safety analysis of every work site

NRG Energy is committed to a drug and alcohol free workplace. To the extent permitted by law and any applicable collective bargaining agreement, employees are subject to periodic random drug testing, and post accident and reasonable suspicion drug and alcohol testing. EOE AA M/F/Protected Veteran Status/Disability. Level, Title and/or Salary may be adjusted based on the applicant's experience or skills.

EEO is the Law Poster (The poster can be found at http://www.eeoc.gov/employers/upload/poster_screen_reader_optimized.pdf)

Official description on file with Talent.

https://careers.nrgenergy.com/SMARTHOMES/job/Plano-Direct-To-Home-Full-Time-Installation-Technician-Plano%2C-TX-TX-75074/1292426500/ (last accessed September 18, 2025).

15.     Upon information and belief, Vivint's business specifically depends on employees being physically present at places in this District, and Vivint has affirmatively acted to make permanent operations within this District to service its customers, including those within this District.

## FACTUAL ALLEGATIONS

### The Asserted Patent

16.    Zinser is the inventor and owner of U.S. Patent No. 7,583,191 (the "'191 Patent" or "Asserted Patent"), titled "Security System and Method for Use of Same."  The application for the '191 Patent was filed on November 14, 2006, which issued as the '191 Patent to Zinser on September 1, 2009.  Zinser has always had and has full ownership of all rights in the '191 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement.  A true and correct copy of the '191 Patent is attached as Exhibit C.

17.    On September 18, 2025, the United States Patent Office issued Reexamination Certificate No. 7,583,191 C1 (included within the definition of "Asserted Patent"), a true and correct copy of which is attached as Exhibit D. As shown in Exhibit D, the '191 Patent underwent a second examination, referred to as a reexamination, wherein the United States Patent Office reviewed the claims in light of a long list of other patents and other materials, and found Claims 21 - 47 to be patentable.

18.    The '191 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### Introduction to Zinser and the Asserted Patent

19.    While doorbell cameras, smartphones, and the applications running on smartphones are now ubiquitous, this was not the case in 2006.  Zinser conceived of the technology described in the '191 Patent while at his house in early 2006.  Zinser had grown tired of the frequent door-to-door solicitations.

20.    After one solicitation too many, Zinser conceived of a system to enable one to view visual and audio communications to facilitate a decision as to whether to answer the door. Furthermore, Zinser realized that cell phones that could do more than make a call were the wave

of the future.   Zinser also realized that these new devices would allow one to remotely monitor

the entryway of the home, to receive video and audio communications from a visitor at the door,

and to transmit audio communications from the cell phone to the visitor.

21.    After working diligently to further develop his solution to the problem of

screening unwanted visitors, Zinser prepared his patent application, which was filed on

November 14, 2006.  One example of the system that Zinser invented is shown in the first two

figures of the '191 Patent:



*Fig.1*



Exhibit C, Figures 1 and 2.  Additional embodiments are shown and/or explained in the '191 Patent.

22.    The patenting process is an expensive and laborious procedure.  Zinser spent a considerable sum of his own funds to obtain the issuance of the '191 Patent nearly three years after filing his application.  In recognition of the length of time it took to review Zinser's application, the Patent Office extended the term of '191 Patent by 317 days.  Exhibit C.  The '191 Patent expires on September 27, 2027.

23.    As subsequent history has shown, the '191 Patent was a pioneering patent that has been widely cited by others since its issuance.  For example, Google Patents shows two hundred thirteen (213) published applications or patents that cite to the '191 Patent.  *See* https://patents.google.com/patent/US7583191B2/en?oq=US+7583191#citedBy (last accessed September 18, 2025).  Vivint has cited the '191 Patent in two of its patents, U.S. Patent No. 10,133,935 and U.S. Patent No. 10,586,114.  The first of these was published on July 16, 2016 (as U.S. Published App. 2016/0203370), demonstrating that Vivint has had knowledge of the

'191 Patent since at least 2016.  And upon information and belief, Vivint has cited the '191

Patent in its invalidity contentions in one or more other litigations.

24.    Another competitor to Vivint, Skybell Technologies, Inc., cited the '191 Patent at

least seventy-one (71) times according to Google Patents.  Unlike Vivint, Skybell respected

Zinser's intellectual property rights and approached him for a license.  The '191 Patent was

licensed by Skybell from June 2013 until January 2025.  Vivint has never approached Zinser for

a license although it has been fully aware of the '191 Patent as shown by the citations to the '191

Patent on the face of at least two of its patents.

25.    Because of Vivint's total disregard to Zinser's rights under the '191 Patent, Zinser

files this lawsuit seeking reasonable compensation for Vivint's infringement of the '191 Patent

by its Accused Products and System (defined below).

## ACCUSED PRODUCTS

26.    Vivint makes, has made, uses, offers to sell, sells, exports, and/or imports

products including video doorbells ("Video Doorbell Products").  Vivint also makes, has made,

uses, offers to sell, sells, exports, and/or imports products that are components of a security

system, such as control panels, hubs, and display devices ("System Components"). Vivint also

makes, has made, uses, offers to sell, sells, exports, and/or imports products that are accessories

to be used with the Video Doorbell Products and/or Vivint System Components, such as, for

example, various cameras (outdoor, doorbell, indoor), thermostats, security alarms, door locks,

detectors (smoke, CO, heat), sensors (door/window, glass break, water, garage door/tilt),

emergency pendants, key fobs, keypads, wireless network devices, smart plugs, light bulbs,

outdoor lights, DVR drives, vehicle security devices, doorbell chime extenders, and cables,

("Accessory Devices").  *See, e.g.*, Vivint.com.  These products are described in *Vivint Terms of Service* dated January 29, 2025, a true and correct copy of which is attached as Exhibit E.

27.    A non-limiting example of a Vivint Video Doorbell Product is shown in the following:



https://www.vivint.com/products/doorbell-camera (last accessed September 18, 2025).

28.    A non-limiting example of a System Product, a control panel, is shown in the following:



https://www.vivint.com/products/smart-hub (last accessed September 18, 2025).

29.    The Vivint Video Doorbell Products, Vivint System Components, and Vivint Accessory Devices are referred to herein as the "Accused Hardware Devices and Components."

30.    For an end-user to make use of any of the Accused Hardware Devices and Components purchased and/or leased from Vivint, the end-user must subscribe to Vivint's services (such end-user referred to herein as a "Subscriber").   Vivint sells services that allow a Subscriber to enjoy full functionality, including access through a smartphone, of the Accused Hardware Devices and Components.   For example, Vivint offers the following services:



https://www.vivint.com/ppc/home-security-comparisons (last accessed September 18, 2025).

Vivint also offers "camera services, DVR Services, connected home services, subscriptions,

installation, troubleshooting, and maintenance and repair services."  *See* Exhibit E, p. 2.  Each of these services are referred to herein as the "Accused Service" and collectively as "Accused Services."

31.     A Subscriber must create an account that includes login credentials, such as a username and password or face ID ("Login Credentials").  Vivint provides Android and iOS apps for use on a smartphone ("Smartphone App") with its Video Doorbell Products, IP Camera Products, and Video Recording Products.  An example is shown in the following screen shot:



https://www.vivint.com/products/app (last accessed September 18, 2025).

32.     Vivint also provides a web app accessible through a browser (the "Web App"), such as a browser on a smartphone, by which a user may access his or her Vivint account.  For example, the front page and many or all lower-level pages on vivint.com have a "Login" option in the top right corner, *e.g.*:



Extracted from https://www.vivint.com/ (last accessed September 18, 2025).  The Smartphone App and Web App are referred to collectively as "User Applications."

33.     A Subscriber using a device such as a smartphone and utilizing Login Credentials (stored on device or entered manually) can exchange among other things video and audio communications with the Vivint Video Doorbell.  For example, a Subscriber using a User Application on his or her Smartphone can receive visual and audio communications on his or her Smartphone from the Video Doorbell and can send audio communications to the Video Doorbell as shown, for example:



https://www.vivint.com/products/doorbell-camera (last accessed September 18, 2025) ("two-way talk"); see also:



https://apps.apple.com/us/app/vivint/id734547946 (last accessed September 18, 2025).

     34.    Further, Vivint operates its "Vivint Smart Home" platform "that provides customers with technology, products and services to create a smarter, greener, safer home.  A smart home has multiple devices integrated into a single expandable platform that incorporates artificial intelligence ('AI') and machine-learning in its operating system, which allows customers to interact with and manage their homes from anywhere via the Vivint app on their smart device.  Vivint Smart Home provides a customized solution for the home using integrated smart cameras (indoor, outdoor and doorbell), locks, lights, thermostats, garage door controls and host of other safety and security sensors."  Exhibit F, NRG Energy, Inc., Form 10-K for FY ended Dec. 31, 2024, at 10-11.  As part of its platform, Vivint operates user agents, proxy servers, registrar servers, redirect servers, session border controllers, gateways, and/or other servers or computers that support and interact over the Internet or LAN with Vivint's User Applications on a Subscriber's phone (the "Vivint Backend System").  The entire "platform"

comprised one or more Vivint Video Doorbell Products, one or more Vivint System Products, one or more Vivint Accessory Devices, and in combination with the Vivint Backend System is referred to herein as the "Accused Vivint System."  The combination of the Accused Vivint System and the Accused Services is referred to herein as the "Accused Instrumentalities and Services."

35.    Access to the Accused Vivint System is controlled by Vivint through, among other things, the Subscriber's Login Credentials.  Vivint benefits from its use and control of the Accused Vivint System.

36.    Vivint benefits from its use of the Accused Vivint System by its sale and/or lease of the Accused Hardware Devices and Components.

37.    Vivint benefits from its use of the Accused Vivint System by its sale of one or more of the Accused Services, including by way of subscription fees.

38.    Vivint benefits from its use of the Accused Vivint System by providing financing to Subscribers for the sale and/or lease of the Accused Hardware Devices and Components. Exhibit F, NRG's 10k, 2024, at. 76, 100-01, 112-13.

39.    The Accused Instrumentalities and Services infringe one or more of Claims 21 - 47 of the '191 Patent.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,583,191

40.    The allegations set forth in the foregoing paragraphs 1-39 are hereby realleged and incorporated herein by reference.

41.    In violation of 35 U.S.C. § 271(a), Vivint has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, one or more claims of the '191 Patent by making, having made, using, offering for sale, selling, exporting, and/or

importing devices and/or using (including for testing purposes) a system in the United States, including within this District.

42.     In addition to or, in the alternative, Vivint has actively induced the infringement of the '191 Patent by Subscribers and/or purchasers or users of the Accused Instrumentalities and Services by, among other actions, intending and/or instructing such Subscribers and/or customers to use the Accused Instrumentalities and Services in a manner that infringes in violation of 35 U.S.C. § 271(b).

43.     As a result of Vivint's infringing conduct, Zinser has suffered damages.  Vivint is liable to Zinser in an amount that adequately compensates him for Vivint's infringement in an amount that is no less than a reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

44.     Vivint has had knowledge of the '191 Patent since at least 2016 based on its filings with the United States Patent and Trademark Office or, in the alternative, since at least the filing date of this Complaint.

45.     Despite this knowledge, Vivint has continued to infringe the '191 Patent and such infringement has been willful.

46.     Unless enjoined by this Court, Vivint will continue to infringe the '191 Patent.

47.     Because of Vivint's infringing activities, Zinser has suffered damages and will continue to suffer damages in the future.

## JURY DEMAND

48.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Zinser demands a trial by jury on all issues triable as such.

## REQUEST FOR RELIEF

49.    Zinser respectfully requests that this Court enter judgment for Zinser and against Vivint as follows:

A.    An adjudication that Vivint has infringed the '191 Patent;

B.    A finding that Vivint's infringement has been willful;

C.    An award of damages to be paid by Vivint adequate to compensate Zinser for Vivint's past infringement of the Patent-in-Suit and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D.    An enhancement of damages due to Vivint's willful infringement under 35 U.S.C. § 284;

E.    A permanent injunction enjoining Vivint and its officers, agents, servants, employees, users, attorneys, and all those persons in active concert or participation with Vivint from the acts described in this Complaint;

F.    An order requiring Vivint to pay an ongoing royalty in an amount to be determined for any continued infringement after the date judgment is entered;

G.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Zinser's reasonable attorneys' fees; and

H.    An award to Zinser of such further relief at law or in equity as the Court deems just and proper.

Dated: September 18, 2025                    Respectfully submitted,

                                             /s/ *Gary R. Sorden*
                                             Gary R. Sorden
                                             Texas Bar No. 24066124
                                             gsorden@coleschotz.com

                                             Aaron Davidson
                                             Texas Bar No. 24007080
                                             adavidson@coleschotz.com

                                             Brian A. Carpenter
                                             Texas Bar No. 03840600
                                             bcarpenter@coleschotz.com

                                             Timothy J.H. Craddock
                                             Texas Bar No. 24082868
                                             tcraddock@coleschotz.com

                                             Brian L. King
                                             Texas Bar No. 24055776
                                             bking@coleschotz.com

                                             COLE SCHOTZ P.C.
                                             901 Main Street, Suite 4120
                                             Dallas, Texas 75202
                                             Tel: (469) 557-9390
                                             Fax: (469) 533-1587

                                             Jeffrey M. Saltman
                                             D.C. Bar No. 979812
                                             jsaltman@coleschotz.com
                                             COLE SCHOTZ P.C.
                                             1050 Connecticut Ave, NW
                                             Suite 500
                                             Washington, DC 20036
                                             Tel: (202) 221-7500
                                             Fax: (202) 478-0945

                                             **ATTORNEYS FOR PLAINTIFF
                                             DUKE W. ZINSER**